**Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497, 24-3504, 24-3507, 24-3508, 24-3510, 24-3511, 24-3517, 24-3519, and 24-3538**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

In re: MCP No. 185; Open Internet Rule (FCC 24-52)

Ohio Telecom Association, et al.,

*Petitioners,*

v.

Federal Communications Commission
and United States of America,

*Respondents.*

On Petitions for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' REPLY IN SUPPORT OF
## MOTION TO TRANSFER TO THE D.C. CIRCUIT

In our transfer motion (No. 24-7000 Doc. 3), respondents explained that these cases should be transferred to the D.C. Circuit because they constitute the latest phase of litigation over a series of interrelated FCC orders concerning the agency's development of Open Internet rules, which have each been closely reviewed by the D.C. Circuit over the past 16 years. During that time, the D.C. Circuit and the FCC have been engaged in an extended conversation—with that court remanding earlier

FCC orders to the agency for further deliberation, and the FCC responding each time with new orders taking into account the D.C. Circuit's prior directives.

In their response, petitioners never seriously grapple with the particular circumstances of this litigation and its long and entangled history with the D.C. Circuit. These cases are not ordinary standalone challenges to discrete agency action: they are part of an ongoing dialogue between the FCC and the D.C. Circuit that has spanned the better part of two decades. The D.C. Circuit is not just familiar with similar legal matters; it has been intimately involved in multiple previous iterations of the very regulatory program at issue, directly shaping the lawful contours of the FCC's Open Internet rules with each decision.

This latest round of follow-on litigation involves essentially the same parties, the same legal landscape, and the same issues that the D.C. Circuit has been grappling with through each successive case and each successive order. If this litigation were to now proceed in this Court instead of the D.C. Circuit, the Court and the parties would need to expend considerable resources to walk the same ground already traveled during the previous years of litigation in the D.C. Circuit.

**1.**   Petitioners contend that it would be unhelpful for this litigation to remain in the D.C. Circuit because, they say, "the law and the facts have changed" (Transfer Opp. 3, 21) since that court's decisions in 2010,[1] 2014,[2] 2016,[3] 2017,[4] and 2019.[5]   Far from weighing against transfer, petitioners' intention to argue that the law or the facts have changed militates strongly *in favor* of transfer.   The D.C. Circuit is the court best suited to speak to the meaning of its past decisions and to evaluate whether any alleged changes in the facts or the law are material to the holdings and analysis set forth in its decisions.   Thus, despite petitioners' efforts to wave away those decisions, this litigation remains "likely to turn significantly on the details of the D.C. Circuit's decisions in *Comcast,*

---

[1]   *Comcast Corp. v. FCC*, 600 F.3d 642 (D.C. Cir. 2010) (vacating and remanding the 2008 *Comcast Order*).

[2]   *Verizon v. FCC*, 740 F.3d 623 (D.C. Cir. 2014) (affirming in part and vacating in part the *2010 Open Internet Order*).

[3]   *U.S. Telecom Ass'n v. FCC*, 825 F.3d 675 (D.C. Cir. 2016) (upholding the *2015 Open Internet Order*), *reh'g denied*, 855 F.3d 381 (D.C. Cir. 2017), *cert. denied*, 139 S. Ct. 454 (2018).

[4]   *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381 (D.C. Cir. 2017) (*U.S. Telecom II*) (opinions addressing petitions for rehearing *en banc* of *U.S. Telecom I* and the *2015 Open Internet Order*).

[5]   *Mozilla Corp. v. FCC*, 940 F.3d 1 (D.C. Cir. 2019) (per curiam) (affirming in part, vacating in part, and remanding in part the 2018 *Restoring Internet Freedom* Order).

*Verizon*, *U.S. Telecom*, and *Mozilla*." Transfer Mot. 20; *see* Resp'ts' Opp. to Mot. for Stay Pending Review, No. 24-7000 Doc. 38 (discussing throughout the relevance of those decisions to this case, *contra* Transfer Opp. 21-22). Petitioners' opposition simply reinforces that issues concerning whether and how the D.C. Circuit's decisions apply here will likely be a central focus of this litigation.[6]

Respondents do not doubt that "[t]his Court is just as competent to review FCC regulations" (Transfer Opp. 2), and we stand ready to defend FCC orders in this Court when appropriate. *See*, *e.g.*, *City of Eugene, Or. v. FCC*, 998 F.3d 701 (6th Cir. 2021).[7] But the most knowledgeable

---

[6] We disagree, for example, with petitioners' contention that "the D.C. Circuit … has [not] reached … whether the major-questions doctrine … applies here." *Compare* Transfer Opp. 3 *with U.S. Telecom I*, 825 F.3d at 704 (addressing major-questions arguments raised by intervenor TechFreedom); *U.S. Telecom II*, 855 F.3d at 383-88 (Srinivasan, J., concurring in denial of rehearing); *id.* at 402-05 (Brown, J., dissenting from denial of rehearing); *id.* at 418-26 (Kavanaugh, J., dissenting from denial of rehearing).

[7] This Court's decision in *City of Eugene* was itself the third phase of litigation over a series of interrelated FCC orders all reviewed in this Court. *See* 998 F.3d at 705-06; *Montgomery Cnty., Md. v. FCC*, 863 F.3d 485, 491 (6th Cir. 2017); *All. for Cmty. Media v. FCC*, 529 F.3d 763 (6th Cir. 2008). The petitioners in *City of Eugene* sought to have that third follow-on order reviewed in the Ninth Circuit, but the Ninth Circuit transferred the case to this Circuit (over the petitioners' opposition) under Section 2112(a)(5) because of its interrelationship

(cont'd)

expositor of the metes and bounds of the D.C. Circuit decisions central to this litigation is the D.C. Circuit itself.

**2.** Petitioners' contention that this case is unrelated to *Mozilla* because the Commission "switched positions" (Transfer Opp. 23-25) ignores the direct throughline from the D.C. Circuit's remand in *Mozilla* to the actions petitioners now challenge.

As our motion explains, the D.C. Circuit in *Mozilla* identified three specific deficiencies in the Commission's repeal of the Open Internet rules—concerning the Commission's treatment of public safety, pole attachment rights, and the Lifeline subsidy program for low-income consumers—and remanded the matter to the Commission with direction for the agency to address those deficiencies. *See* Transfer Mot. 14-15. Then, in the *Order* challenged here, the Commission concluded that it *could not* cure those deficiencies under a Title I regulatory regime: Without the broader powers conferred by Title II, the Commission could not adequately safeguard public safety, *see Order* ¶¶ 51-57, 451-463; could not ensure access to pole attachments and other essential

---

with the earlier phases of litigation in this Court. *See* Order, *City of Eugene, Or. v. FCC*, No. 19-72219 (9th Cir. Nov. 26, 2019). The Court should transfer this matter to the D.C. Circuit for the same reason.

infrastructure for broadband-only providers, *see id.* ¶¶ 69-82; and could not ensure that Lifeline and other universal service programs remain on firm legal footing (especially for broadband-only providers), *see id.* ¶¶ 91-100.

The *Order* therefore concluded, in responses to the specific concerns that the *Mozilla* court directed the agency to address, that satisfying the D.C. Circuit's remit required it to return to a Title II regime and restore the Open Internet rules. Petitioners' disagreement with that conclusion simply underscores how this litigation continues to turn closely on disputes about the D.C. Circuit's previous instructions.

**3.** Petitioners incorrectly suggest (Transfer Opp. 2, 7-8, 12) that, by creating the multicircuit lottery process, Congress meant for the lottery to be the decisive factor for determining where challenges to any given agency order should proceed. But the lottery statute expressly provides that the court selected by the lottery may then further transfer the litigation to another circuit if circumstances warrant. *See* 28 U.S.C. § 2112(a)(5). If this matter is not an appropriate case for transfer under Section 2112(a)(5), it is difficult to imagine what would be.

The multicircuit lottery may indeed be an efficient and appropriate way to select a forum for challenges to new regulatory programs, at least compared to the race-to-the-courthouse regime that preceded it. But Congress did not mean for the lottery to control in cases where another circuit is the most appropriate forum. *See* 28 U.S.C. § 2112(a)(5) (the lottery court may transfer the case "to any other court of appeals" consistent with "the convenience of the parties in the interest of justice"); *BASF Wyandotte Corp. v. Costle*, 582 F.2d 108, 112 (1st Cir. 1978) ("Once all the proceedings have been transferred to one court, then that court, in its discretion, can determine whether a second transfer is appropriate."). And although "there is no general federal policy of developing specialized appellate tribunals[] with established areas of expertise," transfer is nonetheless warranted under Section 2112(a)(5) where a particular court "has already ruled on an identical or related case" involving "the same parties, the same statutory provision, and the same essential issue." *ITT World Commc'ns, Inc. v. FCC*, 621 F.2d 1201, 1208 (2d Cir. 1980).

**4.** Petitioners emphasize that two of them (the Ohio Telecom Association and the Ohio Cable Telecommunications Association) are based in and filed suit in this Circuit. *E.g.*, Transfer Opp. 15-16. But a plurality of the petitioners now opposing transfer sought review in the

D.C. Circuit rather than in this Circuit; a plurality reside in the D.C. Circuit; and all are represented by counsel based in Washington, D.C., not any counsel in this Circuit. *See* Nos. 24-3508, 24-3510, and 24-3511 (CTIA, WISPA, and ACA Connects all sought review in the D.C. Circuit); *see also* Nos. 24-3449 and 24-3538 (USTelecom and NCTA reside in D.C., despite seeking to join petitions in other circuits); *cf.* No. 24-3507 (Benton Institute brought suit in the D.C. Circuit and favors transfer there). As our motion observed, the D.C. Circuit is "obviously a convenient forum" for the parties seeking review here. *United Steelworkers of Am. v. Marshall*, 592 F.2d 693, 698 (3d Cir. 1979); *see* Transfer Mot. 22-23 & n.14.

**5.** Petitioners request that the Court rule on their stay motion before disposing of respondents' motion to transfer. Transfer Opp. 9-11. But as explained in our June 10 letter in No. 24-3449 (Doc. 16), that approach risks consuming judicial resources that could otherwise be conserved, because 28 U.S.C. § 2112(a)(4) provides that any stay entered by this Court "may thereafter be modified, revoked, or extended" by "any other court of appeals to which the proceedings are transferred." Under that provision, if the Court ultimately grants the transfer motion, any stay granted by this Court could be reconsidered de novo by the D.C.

Circuit. *See Mass. Bldg. & Trades Council v. U.S. Dep't of Labor (In re MCP No. 165)*, 21 F.4th 357 (6th Cir. 2021) (dissolving pre-transfer stay granted by another circuit on reconsideration de novo), *overruled as to the merits*, 595 U.S. 109 (2022) (per curiam).

It would make little sense to rule on the stay motion first, as petitioners request, if any stay could then be reconsidered de novo by another court after transfer.  That would provide no real relief for petitioners or other regulated parties, who would still need to prepare for the possibility that the *Order* will take effect as planned if the stay is vacated.  And it could take considerable time and effort from this Court to decide the stay motion instead of fist disposing of the single, straightforward issue presented by respondents' transfer motion.  If the Court concludes that the case should be transferred, then it will be unnecessary for this Court to decide the stay motion, since that would need to be considered anew after transfer.  Petitioners' request that the Court decide the stay motion before the transfer motion would thus be a highly inefficient use of judicial resources and might simply delay the ultimate resolution of this matter.

In response, petitioners now insist (Transfer Opp. 9) that they need an *immediate* decision on the stay motion because they are "already" incurring unspecified "compliance costs." That is at odds with their stay motion, which "request[ed] a ruling on th[e] [stay] motion by July 15" and asked for an administrative stay only "[i]f the Court cannot rule by then." Stay Mot. 3. With the stay motion fully briefed, there is ample time following any transfer to the D.C. Circuit for that Court to decide the stay motion by petitioners' requested July 15 deadline. And as previously noted, a pre-transfer stay granted by this Court would not alleviate any alleged preparation costs that petitioners claim to now be incurring, since they would need to continue preparing for the possibility that the order could take effect as planned if the stay is reconsidered and vacated after transfer, as happened in this Court in *MCP No. 165*.

\*    \*    \*

For the forgoing reasons, and those stated in our motion to transfer, these cases should be transferred to the D.C. Circuit.

Dated:  June 21, 2024

Respectfully submitted,

/s/  *Scott M. Noveck*

P. Michele Ellison
   *General Counsel*

Jacob M. Lewis
   *Deputy General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

/s/  *Andrew W. Chang*

Daniel E. Haar
Nickolai G. Levin
Robert B. Nicholson
Andrew W. Chang
   *Attorneys*

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent*
   *United States of America*

Scott M. Noveck
   *Counsel*

FEDERAL COMMUNICATIONS
   COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal*
   *Communications Commission*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App.
    P. 27(d)(2) because, excluding the parts of the document exempted
    by Fed. R. App. P. 32(f):

    ☒    this document contains 2,038 words, *or*

    ☐    this document uses a monospaced typeface and contains ____
         lines of text.

2.  This document complies with the typeface requirements of Fed. R.
    App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    ☒    this document has been prepared in a proportionally spaced
         typeface using Microsoft Word for Office 365 in 14-point
         Century Schoolbook, *or*

    ☐    this document has been prepared in a monospaced spaced
         typeface using _____ with _____.


                        /s/ *Scott M. Noveck*
                        Scott M. Noveck
                        *Counsel for Respondents*