Nos. 24-7000 (lead), 24-3449, 24-3450, 24-3497, 24-3504, 24-3507,
24-3508, 24-3510, 24-3511, 24-3517, 24-3519, 24-3538

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

IN RE: MCP NO. 185: FEDERAL COMMUNICATIONS COMMISSION,
IN THE MATTER OF SAFEGUARDING AND SECURING THE OPEN INTERNET,
DECLARATORY RULING, ORDER, REPORT AND ORDER, AND ORDER ON
RECONSIDERATION, FCC 24-52, 89 FED. REG. 45404, PUBLISHED MAY 22, 2024

On Petitions for Review

## AMICUS BRIEF OF UNITED STATES CHAMBER OF COMMERCE
## IN OPPOSITION TO MOTIONS TO TRANSFER

Tara S. Morrissey
Tyler S. Badgley
Maria C. Monaghan
Mariel A. Brookins
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington D.C. 20062

Thomas R. McCarthy
Jeffrey M. Harris
Seanhenry VanDyke*
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
jeff@consovoymccarthy.com
seanhenry@consovoymccarthy.com

*Supervised by principals of the firm who
are members of the Virginia bar.

June 24, 2024                    *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................iii

Statement of Interest .................................................................................................v

Introduction ..............................................................................................................1

Argument ...................................................................................................................2

    I.     The FCC's transfer motion is part of a concerted effort by federal agencies to steer administrative law cases out of the regional circuits. ...........2

    II.    Under Section 2112, the FCC's stated reasons for requesting a transfer do not warrant transferring these petitions....................................................... 10

    III.   Granting the FCC's transfer motion would undermine Section 2112's multi-circuit lottery process.......................................................................... 16

Conclusion ............................................................................................................... 18

Certificate of Compliance....................................................................................... 19

Certificate of Service .............................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*City of Eugene, Oregon v. FCC,*
   998 F.3d 701 (6th Cir. 2021) ............................................................... 17

*Consumers' Rsch. v. FCC,*
   67 F.4th 773 (6th Cir. 2023) ............................................................... 17

*Def. Distributed v. Platkin,*
   55 F.4th 486 (5th Cir. 2022) .................................................................8

*Eschelon Telecom, Inc. v. FCC,*
   345 F.3d 682 (8th Cir. 2003) ............................................................... 13

*Gun Owners of Am., Inc. v. Garland,*
   19 F.4th 890 (6th Cir. 2021) ............................................................... 17

*Herr v. U.S. Forest Serv.,*
   803 F.3d 809 (6th Cir. 2015) ............................................................... 17

*Humane Soc'y of U.S. v. Perdue,*
   No. 20-cv-01395, 2024 WL 736729 (N.D. Cal. Feb. 22, 2024) ...................................4

*In re 3M Co.,*
   No. 20-2864, 2020 WL 13924735 (3d Cir. Nov. 18, 2020) ........................................7

*In re Chamber of Commerce,*
   --- F.4th ---, 2024 WL 3042100 (5th Cir. June 18, 2024) ....................... 4, 5, 6, 8, 9, 14

*In re Clarke,*
   94 F.4th 502 (5th Cir. 2024) .................................................................4

*In re Fort Worth Chamber of Commerce,*
   100 F.4th 528 (5th Cir. 2024) ....................................................... 1, 8, 14, 15

*In re Hewlett Packard Enter. Co.,*
   No. 2022-154, 2022 WL 3209326 (Fed. Cir. Aug. 9, 2022) ...................................... 14

*In re Horseshoe Ent't,*
   337 F.3d 429 (5th Cir. 2003) ........................................................... 14, 15

*In re MCP No. 165,*
   21 F.4th 357 (6th Cir. 2021) ............................................................... 13

*ITT World Communications, Inc. v. FCC,*
   621 F.2d 1201 (2d Cir. 1980) ............................................................... 11

*Ky. Waterways All. v. Ky. Utils. Co.,*
   905 F.3d 925 (6th Cir. 2018) ............................................................... 17

*Moore v. Rohm & Haas Co.,*
    446 F.3d 643 (6th Cir. 2006) ................................................................. 3

*Newsweek, Inc. v. U.S. Postal Serv.,*
    652 F.2d 239 (2d Cir. 1981) ................................................................. 3

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ................................................................. 6

*Reese v. CNH Am. LLC,*
    574 F.3d 315 (6th Cir. 2009) ................................................................. 3, 13

*U.S. Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ................................................................. 4

*U.S. Telecom. Ass'n v. FCC,*
    825 F.3d 674 (D.C. Cir. 2016) ................................................................. 6, 12

*United States v. Mendoza,*
    464 U.S. 154 (1984) ................................................................. 10

*United Steelworkers of Am. v. Marshall,*
    592 F.2d 693 (3d Cir. 1979) ................................................................. 13

## Statutes

28 U.S.C. §1295(a) ................................................................. 10

28 U.S.C. §1391(e) ................................................................. 3, 15

28 U.S.C. §1404(a) ................................................................. 4, 14

28 U.S.C. §2112(a) ................................................................. 4, 5, 6, 10, 11, 14

29 U.S.C. §655(c) ................................................................. 12

42 U.S.C §7607(b)(1) ................................................................. 3

## Other Authorities

*Multidistrict and Multicircuit Litigation: Coordinating Related Federal Cases,*
    Cong. Rsch. Serv. (Nov. 17, 2021) ................................................................. 16

Wright & Miller, Fed. Prac. & Proc. (4th ed. June 2024 Update) ................................................................. 14

## STATEMENT OF INTEREST[1]

The United States Chamber of Commerce is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber is interested in this case because the FCC's venue-transfer motion is part of a trend of federal agencies attempting to use venue-transfer motions to steer major regulatory challenges out of the regional circuits. This growing trend harms litigants and courts by saddling them with burdensome threshold litigation—frequently on an emergency timeline—in cases that often already involve fast-paced litigation over stays and other interim relief. This trend also harms the regulated public by impairing its right to hold agencies accountable for unlawful conduct in the jurisdictions where that conduct harms the public.

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* certifies that no other person or entity, other than amicus curiae, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

The Chamber is also interested in this case because of its own experience litigating venue-transfer motions against federal agencies. For example, just last week, the Fifth Circuit granted a second writ of mandamus in a challenge to which the Chamber is a party involving a major CFPB rulemaking. *See In re Chamber of Commerce*, --- F.4th ---, 2024 WL 3042100, at *1 (5th Cir. June 18, 2024). Both rounds of emergency mandamus proceedings in that case were precipitated by a venue-transfer motion filed by the CFPB and granted by the district court. The Chamber thus has firsthand experience with how such unnecessary gamesmanship delays and complicates regulatory challenges, and wishes to submit lessons from that experience for the Court's consideration in this case.

## INTRODUCTION

The FCC's motion is just another in a growing string of agency attempts to move major regulatory litigation to the District of Columbia on the basis that "Washington knows best." Hoping to sustain an aggressive regulatory agenda, agencies are increasingly trying to transfer cases away from venues where people and businesses bear the brunt of these burdens and to a circuit that agencies think will be a more government-friendly venue. In doing so, the government seeks to "concentrate federal judicial power in D.C. and undermine our federalist system." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 540 (5th Cir. 2024) (Oldham, J., concurring). These transfer motions also serve as a delay tactic for agencies, especially where challengers seek interim relief on an expedited basis. This effort is bad for litigants, courts, and the public, and this Court should reject it.

These transfer fights harm those who challenge unlawful agency action, as they must commit additional time and resources to litigating threshold venue issues that are collateral to the merits of their claims. They burden judicial economy by entangling courts in these collateral disputes and often precipitating emergency appellate proceedings. And if the agency is successful, the regulated public loses the opportunity to challenge agency conduct in the jurisdiction where that conduct regulates and harms them.

Courts have generally denied federal agencies' transfer motions because those motions do not meet the applicable legal standard, which puts a substantial thumb on the scale in favor of the plaintiff's choice of forum. The same should go for the FCC's

motion here. The FCC's argument for transfer boils down to (1) the fact that the D.C. Circuit has previously decided four cases addressing FCC regulation of internet service providers; and (2) the fact that most of the lawyers involved in this case work in D.C. Neither of those points is persuasive—appellate courts across the country regularly decide federal rulemaking cases, and it is the location of the parties, not the attorneys, that is relevant to the transfer analysis.

This transfer motion is especially inappropriate because the FCC seeks to move this litigation to the D.C. Circuit after the multi-circuit lottery process already selected the Sixth Circuit—not the D.C. Circuit—to adjudicate this case. Granting the motion would undermine the judicial lottery system, reintroducing through the back door of transfer motions the forum shopping that Congress sought to eliminate when it established the current system of random selection in 1988. And granting the motion would have few if any countervailing benefits, because the Sixth Circuit is just as competent as the D.C. Circuit to adjudicate both regulatory challenges generally and FCC cases specifically. This Court should deny the FCC's motion and protect Congress's preference for dispersed regulatory challenges from agencies' growing appetite to consolidate major regulatory litigation on their home turf in the District of Columbia.

## ARGUMENT

### I. The FCC's transfer motion is part of a concerted effort by federal agencies to steer administrative law cases out of the regional circuits.

Agency motions to transfer venue in major regulatory challenges to the District of Columbia are becoming more frequent. Agencies primarily pursue transfer litigation

to delay regulatory challenges and seek a more favorable forum. But these are not legitimate reasons to disturb a plaintiff's choice of forum. Courts so far have largely rejected agency transfer gambits of this sort, and this Court should do the same.

The default rule has long been that, subject to applicable venue statutes, the plaintiff chooses the presumptive forum for adjudication and "'the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). For certain agency rules, of course, Congress has channeled all legal challenges into a single forum. *E.g.*, 42 U.S.C §7607(b)(1) (establishing venue in the D.C. Circuit for Clean Air Act rules with "nationwide scope or effect"). But for most administrative law challenges, venue is proper in a district where the plaintiff resides, or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(e). Congress has thus preserved the traditional principle favoring "jurisdiction in the forum chosen by an aggrieved party." *Newsweek, Inc. v. U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981). In such cases, courts will defer to the plaintiff's choice of forum "'unless the balance [of factors under 28 U.S.C. §1404(a)] is strongly in favor of the defendant.'" *Reese*, 574 F.3d at 320; *see Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) (explaining the "burden of proof in arguing for transfer is on defendant" (citing Wright & Miller, Fed. Prac. & Proc. §3848 (2d ed. 2005))); *In re Clarke*, 94 F.4th

502, 508 (5th Cir. 2024) ("Transfer under 28 U.S.C. §1404(a) is properly granted only if the moving party 'clearly establishes good cause.'").[1]

In recent years, federal agencies have become dissatisfied with having to litigate in regulated entities' home fora where the burdens of agency regulation fall most heavily. Thus, even where Congress refused to grant federal courts in the District of Columbia exclusive jurisdiction, agencies are trying to re-route those regulatory challenges into the District of Columbia themselves by filing motions to transfer under 28 U.S.C. §1404(a). *E.g.*, *Clarke*, 94 F.4th at 508 (motion to transfer challenge to CFTC licensing determination with nationwide effect); *In re Chamber of Commerce*, --- F.4th ---, 2024 WL 3042100, at *1 (5th Cir. 2024) (motion to transfer challenge to nationwide CFPB rule regulating credit card late fees); *Humane Soc'y of U.S. v. Perdue*, No. 20-cv-01395, 2024 WL 736729, at *1 (N.D. Cal. Feb. 22, 2024) (motion to transfer challenge to nationwide Department of Agriculture rule regulating chicken slaughterhouses); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 345 n.7 (5th Cir. 2022) (motion to transfer challenge to nationwide DOD rule regarding vaccination requirements).

---

[1] These cases address venue-transfer motions under 28 U.S.C. §1404(a), whereas the instant motion is under 28 U.S.C. §2112(a)(5), which governs transfer when a case has been assigned via the judicial lottery system. The textual standards for transfer under the two provisions are similar but not identical. *Compare* 28 U.S.C. §1404(a) (court may transfer "[f]or the convenience of parties and witnesses, in the interest of justice"), *with id.* §2112(a)(5) (court may transfer "[f]or the convenience of the parties in the interest of justice"). If anything, given that the default venue is selected by the judicial lottery system (rather than chosen by the plaintiff), it should be harder to justify a transfer under Section 2112(a)(5).

4

This aggressive strategy has met with little success—district courts granted transfer motions in two of the above cases, but neither survived mandamus review. For example, in *In re Chamber of Commerce*, the court determined that transferring plaintiffs' challenge to a nationwide rule to the District of Columbia was "a clear abuse of discretion." 2024 WL 3042100, at *1. As the court explained, "[i]f Congress wants to enshrine D.D.C. as a venue for APA challenges or cases where a federal agency or other D.C.-based government actor is the defendant, it can easily do so. But it hasn't." *Id.* at *7. Rather than choosing to "amass judicial power in the District of Columbia," Congress determined that that the standard for transfer motions would "apply no differently" in cases involving challenges to rules promulgated by agencies located in D.C. *Id.* Given Congress's standard for transfer motions, the agency could not carry its burden to "demonstrate that its chosen venue is clearly more convenient." *Id.* at *10 (cleaned up).

Despite the near-uniform failure of federal agencies' transfer-to-D.C. gambit, the FCC is now even more aggressively deploying that strategy—this time attacking the judicial lottery system. Specifically, it seeks to transfer a nationwide regulatory challenge to the D.C. Circuit even though the multi-circuit lottery process already picked the Sixth Circuit, *rather than the D.C. Circuit*, as the venue for this litigation. In this circumstance, not only has Congress declined to channel regulatory challenges into a D.C. forum, but it has also expressly designed a mechanism to give each court of appeals in which petitions are filed an equal chance to adjudicate the consolidated petitions. *See* 28 U.S.C. §2112(a)(3). This Court should not validate the FCC's attempt to "amass federal judicial

power in the District of Columbia," especially where Congress has specifically sought to disperse judicial power through the random multi-circuit lottery process. *In re Chamber of Commerce*, 2024 WL 3042100, at *7.

The FCC's strategy here—as with the other transfer-to-D.C. ploys mentioned above—is transparently designed to give the agency two significant advantages, neither of which have anything to do with the applicable transfer standard. *See* 28 U.S.C. §2112(a)(5) ("For the convenience of the parties in the interest of justice, the court in which the record is filed may thereafter transfer all the proceedings with respect to that order to any other court of appeals."). First and foremost, the agency wants to transfer the case to give itself a better chance of ultimately prevailing in the litigation. The FCC has successfully defended one order regulating broadband under Title II in the D.C. Circuit. *See U.S. Telecom. Ass'n v. FCC*, 825 F.3d 674, 704-06 (D.C. Cir. 2016). So it is only natural that it would prefer a forum where it has a 1-0 record in this regulatory arena to a new and less predictable forum. But the fact that a transferee forum may be more "favorable to [the] defendant should not be considered" in a transfer analysis. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252 n.19 (1981).

Unlike the FCC's theory of entitlement to the most favorable forum, the rationale behind the multi-circuit lottery process tracks common sense: If an agency promulgates rules that have an impact everywhere in the country, it must be prepared to defend those rules anywhere in the country. This case is a good example. A rule governing internet access has effects throughout the country, in every circuit, every

state, and indeed in most households. The judicial lottery process is especially appropriate where, as here, a case involves challenges to a rule with near-uniform effect nationwide. Were it otherwise, agencies could defy the principle that they—like any defendant—should be answerable for unlawful conduct in the jurisdiction where that conduct harms plaintiffs. *See, e.g.*, *In re 3M Co.*, No. 20-2864, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020) (considering where "harm [was] suffered" in evaluating transfer motion under §1404(a)).

The second advantage the agency seeks to obtain here is injecting delay into the adjudicatory process. This case is a good example. Knowing full well that its order is set to go into effect on July 22—leaving barely a month for petitioners to seek an interim stay and obtain a decision on their motion—the FCC has taken the position that this Court should decide the pending transfer motions before *any* court rules on petitioners' stay motion. ECF No. 3 at 1. If the Court follows that approach, then whether the FCC wins or loses its transfer motion, it will have succeeded in buying time toward the effective date of its rule, forcing petitioners to begin compliance efforts and expenditures. And there is at least some chance that the time consumed by upfront adjudication of the FCC's transfer motion—especially if it is successful—would be dispositive in determining whether petitioners ultimately obtain a stay before the order's effective date.

The multiple transfer motions in *In re Chamber of Commerce* further illustrate the delay and confusion that will result if litigating a transfer motion becomes a common feature of bringing regulatory challenges in regional circuits. There, several business

associations—including the Fort Worth Chamber of Commerce—sued the CFPB in the Northern District of Texas to challenge a rule governing credit card late fees. 2024 WL 3042100, at *1. Plaintiffs filed the lawsuit on March 7, 2024, two days after the rule was adopted. They requested expedited briefing and decision on their motion for preliminary injunction, so as to avoid undertaking substantial compliance burdens necessary to comply with the rule's May 14 effective date. The CFPB contested venue and argued that the case should be transferred to the District of Columbia. Rather than issuing a ruling on plaintiffs' preliminary-injunction motion, the district court transferred the case to the District of Columbia. The Fifth Circuit held that the district court had effectively denied plaintiffs' motion for a preliminary injunction, granted mandamus relief to halt the transfer, and ordered the district court to rule on the motion for a preliminary injunction. *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 531 (5th Cir. 2024).

On remand, the district court granted the motion for a preliminary injunction on May 10, four days before the effective date of the rule. The CFPB again moved to transfer the case to the District of Columbia, and the district court again decided to do so. This led to another round of fast-paced mandamus proceedings in the Fifth Circuit and required an emergency administrative stay to prevent the transferee court from docketing the case. *In re Chamber of Commerce*, 2024 WL 3042100, at *2; *cf. Def. Distributed v. Platkin*, 55 F.4th 486, 490 (5th Cir. 2022) (court of appeals held that a transfer order was an abuse of discretion but no remedy was effective because "the [transferee] court

refused to transfer the case back"). The Fifth Circuit also granted the second mandamus petition, holding that the district court clearly abused its discretion and concluding that the agency failed to satisfy its burden of clearly demonstrating good cause for transfer under Section 1404(a). *In re Chamber of Commerce*, 2024 WL 3042100, at *1. The result was a "byzantine procedural history" that imposed substantial burdens on judicial economy unrelated to the merits of the case and nearly thwarted the challengers from having their case adjudicated where Congress deemed appropriate. *Id.*

Threshold litigation resulting from transfer motions may help agencies by delaying the issuance of remedies and requiring challengers to commit more resources to litigation. But it hurts courts and the regulated public. Courts dealing with time-sensitive contested motions for interim relief in high-profile cases must resolve an additional layer of collateral litigation. The regulated public, if the venue-transfer gambit is successful, is deprived of the right to hold an agency accountable in a jurisdiction where it has imposed burdens. And even where the venue-transfer gambit is not successful, it wastes judicial and party resources, as the substantial delay in review often imposes substantial compliance costs on the regulated public as they prepare for these new rules. The Court should put an end to this gamesmanship (at least in this Circuit) by rejecting the latest (and perhaps most aggressive) iteration of federal agencies' ploy to move major regulatory challenges to the District of Columbia.

**II.    Under Section 2112, the FCC's stated reasons for requesting a transfer do not warrant transferring these petitions.**

This Court should be exceptionally skeptical of the FCC's transfer motion, which seeks to delay these proceedings and win a forum the agency perceives as more sympathetic. This Court should also squarely reject the FCC's pretextual rationales for requesting a transfer, because they are legally insufficient under the standard in 28 U.S.C. §2112(a)(5).

The FCC's first stated rationale is that the D.C. Circuit has previously decided four major cases addressing FCC regulation of internet service providers under the Telecommunications Act of 1996. ECF No. 3-1 (Transfer Mot.) at 20. But another court's experience with a particular area of the law is not a basis for transferring a case for the "convenience of the parties in the interest of justice." 28 U.S.C. §2112(a)(5). Were it otherwise, transferring cases because of the transferee court's experience—giving the transferee court more experience as a result—would create a self-reinforcing trend of subject-matter specialization among the courts of appeals. This trend would also deprive the Supreme Court of "the benefit it receives from permitting several courts of appeals to explore difficult questions before th[e] Court grants certiorari." *United States v. Mendoza*, 464 U.S. 154, 160 (1984). Congress knows how to create courts with specialized jurisdiction. *E.g.*, 28 U.S.C. §1295(a) (giving the Federal Circuit "exclusive jurisdiction" over various cases). But that is plainly not the system Congress envisioned

when it created the multi-circuit judicial lottery for challenges to nationwide rules. Congress created a system that involves choosing a court of appeals "by means of random selection" each time—not evolving towards a system where courts increasingly monopolize cases in areas where they have developed subject-matter expertise. 28 U.S.C. §2112(a)(3).

To overcome this point, the FCC attempts to strengthen the connection between this litigation and the D.C. Circuit's previous cases involving ISPs and the Telecommunications Act, but each attempt fails. It relies most heavily on *ITT World Communications, Inc. v. FCC*, 621 F.2d 1201 (2d Cir. 1980), which precedes the creation of the judicial lottery process in 1988, and *denied* a motion to transfer that case to the D.C. Circuit in any event. *Id.* at 1209; *see* Transfer Mot. at 20-21. The court's opinion, however, affirmed the "policy of unifying related proceedings in a single court, and obtaining consistent results," which the FCC argues supports transfer. *ITT World*, 621 F.2d at 1208.

Whatever weight should be given to the policies of "unifying related proceedings" and "obtaining consistent results," those considerations do not favor transfer here. *Id.* This case is not materially related to any previous Telecommunications Act challenge, and if it were transferred to the D.C. Circuit, it should be randomly assigned to a new panel, rather than designated as "related" to any other case. Indeed, only 3 of the 11 currently active D.C. Circuit judges participated in any of the four major cases

11

invoked by the FCC; Judge Tatel, who authored three of those decisions,[2] is no longer a judge on that court; and the D.C. Circuit did not rehear any of the previous four cases en banc. So the FCC's claim about "consistency" boils down to an argument that the D.C. Circuit has more relevant Telecommunications Act caselaw than the Sixth Circuit. But the existence of more (or more favorable) precedent in the transferee court is not an appropriate basis for transferring a case.

Nor is the FCC correct that this case should be transferred because it involves the same statutory provision, the same "essential issue," and many of the same parties that participated in those four previous cases. Transfer Mot. At 2. As the petitioners who oppose transfer have explained, this case will involve very different issues and arguments, such as how the major-questions doctrine applies to "net neutrality" rules rather than how *Chevron* doctrine applied to prior rules on the same subject.[3] ECF No. 33 at 21-22.

A hypothetical may illustrate the breadth of the FCC's proposed standard. If OSHA promulgated another major emergency standard under 29 U.S.C. §655(c), national trade associations challenged that standard, and the key issues involved the scope

---

[2] Judge Tatel and then-Judge Srinivasan coauthored the majority opinion in *U.S. Telecom. Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016).

[3] Even if this case does end up implicating *Chevron*, any *Chevron* analysis is likely to look very different after the upcoming conclusion of this Supreme Court term. *See Loper Bright Enters. v. Raimondo*, No. 22-451 (U.S.); *Relentless, Inc. v. Department of Commerce*, No. 22-1219 (U.S.).

of the agency's authority under Section 655(c) and the applicability of the major questions doctrine, would transfer to the Sixth Circuit be in order because of this Court's prior decision on OSHA's vaccine mandate? *See In re MCP No. 165*, 21 F.4th 357 (6th Cir. 2021). Of course not—even though such a hypothetical case would involve the same parties, same statutory provision, same basic issue, and even the same doctrinal framework (*e.g.*, major-questions doctrine) as this Court's previous decision. The FCC's related-case-lite transfer argument is hardly distinguishable from that sort of logic, and this Court should decline to go down that road.

The FCC's second stated basis for transferring this case, that the District of Columbia is "'a convenient forum,'" fares no better. Transfer Mot. at 22. To begin with, the FCC's concession that "'there is no measurable difference in convenience'" between the Sixth and D.C. Circuits forecloses its own argument. *Id.* at 23. That is because convenience-related factors must "balance … strongly in favor of the defendant" to justify displacing the plaintiff's choice of forum. *Reese*, 574 F.3d at 320.

Additionally, the FCC's convenience argument is primarily based on the location of the parties' counsel, *see* Transfer Mot. at 22, and this Court should reject the notion that the location of attorneys is relevant to the transfer analysis. The FCC's only support for considering the convenience of counsel comes from two out-of-circuit cases—one decided in 1979 and one that only addresses the issue in a throwaway line in a footnote. *See United Steelworkers of Am. v. Marshall*, 592 F.2d 693, 698 (3d Cir. 1979); *Eschelon Telecom, Inc. v. FCC*, 345 F.3d 682, 682 n.1 (8th Cir. 2003). The overwhelming weight of

authority strongly rejects the notion that the location of counsel, including the concentration of government attorneys in D.C., should have any bearing on a convenience analysis. Wright & Miller, Fed. Prac. & Proc. §3850 (4th ed. June 2024 Update) ("[T]he great majority of the cases have not [considered convenience and availability of counsel], saying either that it is 'irrelevant' or 'improper' to consider, or that it is to be given very little weight."); *see In re Chamber of Commerce*, 2024 WL 3042100, at *7 ("[T]he location of an agency's attorneys should not be considered."); *In re Horseshoe Ent't*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."); *accord In re Hewlett Packard Enter. Co.*, No. 2022-154, 2022 WL 3209326, at *2 (Fed. Cir. Aug. 9, 2022).

This majority view rejects considering the convenience of counsel for good reason. The text of the relevant venue-transfer statutes considers only the "convenience of the parties," 28 U.S.C. §2112(a)(5), or the "convenience of parties and witnesses," *id.* §1404(a). Simply put, because the statutes are "concerned with the convenience of *parties*, not *attorneys*, we do not consider the convenience of counsel." *In re Chamber of Commerce*, 2024 WL 3042100, at *6. If the FCC's location-of-counsel theory were accepted, it would favor transfer to D.C. in nearly every challenge to agency action. Lawyers who specialize in such challenges are frequently located in D.C., and "the travel costs of the plaintiffs' lawyers" should not be "used to oppose the plaintiffs' own choice of venue." *In re Fort Worth Chamber of Commerce*, 100 F.4th at 540 (Oldham, J., concurring). Moreover, if travel costs for federal government lawyers "are to weigh against out-of-D.C.

venues, federal defendants could always argue that litigation should be transferred to the D.D.C." *Id.* But the venue statute contemplates that the federal government must face litigation across the country, in any district in which a plaintiff resides and in which the burdens on the government's rules are felt. *See* 28 U.S.C. §1391(e)(1)(C).

Moreover, a rule considering the convenience of counsel would be very amenable to gamesmanship. Litigants who prefer the D.C. courts, for example, could hire exclusively D.C. attorneys to maximize their shot at winning a motion to transfer to their preferred forum. Some litigants would face undue restrictions on their choice of counsel due to the risk that counsel's location would play into an opponent's transfer motion. One court of appeals identified a related "boot strapping" problem, faulting a district court for requiring a litigant to retain counsel in the forum to litigate a motion to transfer, and then denying the motion to transfer partially because the litigant had counsel in the forum. *Horseshoe Ent'l*, 337 F.3d at 434.

The D.C. Circuit's previous experience with Telecommunications Act suits of this kind provides no sound basis for transferring this case. Neither does the convenience of the FCC's attorneys—or the fact that some petitioners have also retained D.C. attorneys. The Sixth Circuit is an equally competent and equally convenient forum for this dispute, so there is no basis under 28 U.S.C. §2112(a)(5) to upset the results of the multi-circuit lottery process.

### III.  Granting the FCC's transfer motion would undermine Section 2112's multi-circuit lottery process.

Congress established the multi-circuit lottery process in 1988 to promote efficiency, randomness, and fairness in the face of a system marked by aggressive forum-shopping—specifically, the "race to the courthouse" system under which "all proceedings were to be transferred to the court where proceedings were first instituted." *Multidistrict and Multicircuit Litigation: Coordinating Related Federal Cases* at 1, Cong. Rsch. Serv. (Nov. 17, 2021), https://perma.cc/G58H-4LBZ. While perhaps not perfect, the multi-circuit lottery process has "generally advanced Congress's practical purposes, promoting efficiency for the parties and the courts" relative to the previous status quo. *Id.* at 2.

The FCC's position would destroy the judicial lottery system and its dispersal of nationwide regulatory challenges across the geographic circuits. Under its theory, the first court to adjudicate a challenge involving a new regulatory framework would also gain a powerful claim to any future case challenging subsequent iterations of that regulatory framework. But this system of channeling cases to specialized courts with subject-matter expertise is precisely what Congress opted against.

The Court should not permit the FCC to use transfer motions to recreate the forum shopping that Congress sought to limit. Granting motions of this sort would permanently damage the integrity of the multi-circuit lottery process by inducing threshold venue-selection litigation, replacing random selection—quick, administrable, and

16

fair—with mercurial judgments about the relatedness of cases and the competencies of courts.

Any potential benefits from transferring this case to the D.C. Circuit are far outweighed by the damage that such a transfer would do to the multi-circuit lottery process and the harm it would impose on regulated entities. As already explained, even if a circuit's familiarity with the regulatory framework was relevant to the transfer analysis, the D.C. Circuit would assign this case to a new, randomly selected panel whose members are unlikely to have been involved in that court's previous major Telecommunications Act cases involving ISPs. In short, both a Sixth Circuit panel and a D.C. Circuit panel will bring fresh eyes to this case.

Because of the rough parity of expertise as to the specific issues in this case, it is hard to posit that the D.C. Circuit is a superior forum for this case without assuming that the D.C. Circuit is a superior forum for regulatory challenges generally. But the Sixth Circuit is just as capable of handling major regulatory challenges—including those involving the FCC—as the D.C. Circuit. *E.g.*, *Consumers' Rsch. v. FCC*, 67 F.4th 773 (6th Cir. 2023); *City of Eugene, Oregon v. FCC*, 998 F.3d 701 (6th Cir. 2021); *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890 (6th Cir. 2021) (en banc); *Ky. Waterways All. v. Ky. Utils. Co.*, 905 F.3d 925 (6th Cir. 2018); *Herr v. U.S. Forest Serv.*, 803 F.3d 809 (6th Cir. 2015). Because granting the FCC's motion would substantially undermine the multi-circuit lottery—with few if any countervailing benefits—the Court should deny the FCC's transfer motion.

17

## CONCLUSION

The Chamber urges this Court to deny the pending motions to transfer this case

to the U.S. Court of Appeals for the District of Columbia.

Respectfully Submitted,

Tara S. Morrissey

Tyler S. Badgley

Maria C. Monaghan

Mariel A. Brookins

U.S. Chamber Litigation Center

1615 H Street, N.W.

Washington D.C. 20062

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy

Jeffrey M. Harris

Seanhenry VanDyke*

Consovoy McCarthy PLLC

1600 Wilson Blvd., Suite 700

Arlington, VA 22209

(703) 243-9423

tom@consovoymccarthy.com

jeff@consovoymccarthy.com

seanhenry@consovoymccarthy.com

*Supervised by principals of the firm who are members of the Virginia bar.

June 24, 2024

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This brief complies with Rule 32(a)(7) because it contains 4,561 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: June 24, 2024                                        */s/ Thomas R. McCarthy*

## CERTIFICATE OF SERVICE

I filed this brief on the Court's electronic filing system, which will email everyone

requiring notice.

Dated: June 24, 2024                                    */s/ Thomas R. McCarthy*